IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

HUMBERTO MELÉNDEZ-ORTIZ, *et al.*,

    Plaintiffs,

    v.

WYETH PHARMACEUTICAL CO.,

    Defendant.

Civil No. 08-1676 (JAG/BJM)

## REPORT AND RECOMMENDATION

    Plaintiff Humberto Meléndez-Ortiz ("Meléndez" or "plaintiff"), his spouse Sonia Meléndez-Lugo, and their conjugal partnership (collectively, "plaintiffs") bring this action against Wyeth Pharmaceutical Company ("Wyeth" or "defendant") for damages and other relief under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and related claims under Puerto Rico law.  (Docket No. 1).  Defendant filed a motion for summary judgment (Docket No. 25), plaintiff opposed (Docket No. 39), defendant replied (Docket No. 49), and plaintiff filed a sur-reply. (Docket No. 66).  The presiding district judge referred the summary judgment motion to me for a report and recommendation.  (Docket No. 77).  For the reasons that follow, I recommend that defendant's motion for summary judgment be **GRANTED**.

### I. FACTUAL BACKGROUND

    The following material facts, which will be viewed in the light most favorable to plaintiff as the nonmoving party, are either undisputed or conclusively supported by the evidentiary record except where otherwise noted.[1]

---

[1] In determining what facts are supported by the evidentiary record, I have applied Local Rule 56(e):

    Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly

Plaintiff Meléndez was born on November 2, 1957. Starting in 1996, he worked at the defendant pharmaceutical company's Guayama manufacturing plant, first as a temporary employee, then as a regular employee as of January 5, 1998, when he was 40. (Docket Nos. 24, ¶¶ 1-3, 5; 31-2, p. 4-5). Plaintiff received a copy of the Wyeth Employee Manual when he started his job and received an updated copy whenever Wyeth modified it. (Docket No. 24, ¶ 4). Meléndez was originally hired as a Packaging Operator in Wyeth's Oral Contraceptives ("OC") unit, one of several business units at the plant. He subsequently became the second-shift Manufacturing Material Handler in OC, then successfully applied to transfer to the first shift in 2002, when he was 45. (Id., ¶¶ 1, 3, 6, 7). Each Wyeth business unit has its own Material Handlers. From his transfer up until his termination, plaintiff was the sole first-shift Material Handler in OC. (Docket No. 24, ¶ 8). His job responsibilities included loading pallets of products, transferring bins of materials, stocking and maintaining operators' supplies and equipment, and recording data on production documents. His position was "indirect," meaning he had no direct contact with the medication being manufactured. (Id., ¶¶ 9-10). From late 2006 onward, Meléndez's supervisor was Alex López, the Senior Manufacturing Team Leader for the OC first shift, who reported to manager Javier Morales. (Docket Nos. 24, ¶ 13; 24-3, ¶ 4; 39-2, ¶ 4; 50-6, ¶¶ 3, 4, 6).

---

controverted. An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.

Moreover, Local Rule 56(c) provides that a party's opposing statement "may contain *in a separate section* additional facts, set forth in separate numbered paragraphs and supported by a record citation as required by subsection (e) of this rule." Local R. 56(c) (emphasis added). The court notes that plaintiffs' responses to defendant's proposed statement of facts go beyond admitting, denying, or qualifying defendant's facts; they generally include a large amount of information that is unrelated to defendant's corresponding facts and properly belongs in the opposing statement's separate section of additional facts, if anywhere. The court has disregarded these portions as not compliant with Local Rule 56(c). (Docket No. 39-2).

On June 23, 2006, Meléndez received a warning in writing[2] from Morales for failing to correctly monitor and document the temperature of a batch of oral contraceptive tablets. (Docket Nos. 24, ¶ 11; 24-4, 31-3). On April 20, 2007, he received a written warning from López and Morales for failing to document steps in the temperature monitoring process for another batch of oral contraceptive tablets. The second warning cautioned further disciplinary action, including termination, if Meléndez's performance did not improve. A manufacturing investigation report ("MIR") was generated for each incident.[3] (Docket Nos. 24, ¶¶ 11-12; 24-5, 31-4). Meléndez testified in his deposition that he signed the warning only after López threatened him with termination if he did not sign it. (Docket No. 31-2, p. 22-23).

Wyeth rates employees' performance on a scale from 1 ("significantly below expectations") to 5 ("significantly above expectations"). Meléndez received an overall performance rating of 3 ("meets expectations") for the year 2006. (Docket Nos. 24, ¶ 14; 39-2, ¶ 2). On December 21, 2007, López and Meléndez discussed Meléndez's 2007 performance evaluation, which rated his performance a 2 ("below expectations") overall and a 1 in the areas of "First Time Quality" and "Attendance." López notes in the "First Time Quality" field documented several errors Meléndez had made and that two MIRs had resulted from Meléndez's failure to follow proper procedures: one report corresponding to the April 2007 warning, and another for which there is no evidence that plaintiff received a warning. Meléndez's "Attendance" rating reflected at least 21 unplanned absences. Meléndez, who testified that he got upset and left the room during the discussion with López, left the evaluation's employee comment box empty. (Docket Nos. 24, ¶¶ 14-18; 24-6; 31-2, p. 25-31; 31-5).

Luis Seguí, a Wyeth employee from 2005 until February 2008, worked with Meléndez. (Docket No. 39-2, ¶ 5). During his deposition, Seguí testified that since mid-2007, López referred

---

[2] Plaintiff's contention that it is unknown whether the warning was written or verbal (Docket No. 39, p. 4) is unavailing in light of the written warning's inclusion in the record. (Docket Nos. 24-4, 31-3).

[3] The MIR documentation, which defendant has authenticated, shows that plaintiff admitted to having made the errors at issue. (Docket Nos. 49, p. 3-4; 50-3, p. 1-2, 5, 9, 11).

to Meléndez jokingly as an "old man" and "old fart," comments which Seguí found mocking and offensive. (Docket Nos. 39-2, ¶¶ 6, 7; 50, ¶ 6; 60-3, p. 6-7). Ismael González, a temporary employee who worked with Meléndez until December 2006, testified in his deposition that in the presence of supervisors, Wyeth employees would make jesting comments that Meléndez was an old man and an old lady, and that González, who was much younger than Meléndez, was going to replace him. According to González, the supervisors' only response was to laugh at the comments, which González felt were "out of place." (Docket Nos. 39-2, ¶¶ 10, 12; 60-4, p. 3, 4, 10). González testified that Meléndez went to the Human Resources ("HR") department on one occasion. (Docket Nos. 39-2, ¶ 13; 60-4, p. 8).

Seguí testified that he thought Meléndez's workload was excessive. (Docket Nos. 39-2, ¶ 9; 60-3, p. 7). González testified that the Material Handler work for the other shifts would fall to Meléndez since the tasks left for those shifts typically would not get done. (Docket Nos. 39-2, ¶ 10; 50, ¶ 10; 60-4, p. 5). According to Seguí and González, López would seek out Meléndez after the end of plaintiff's shift, berate him for allegedly failing to perform all his tasks, and order him to go back and complete tasks Meléndez had left for the next shift to do. (Docket Nos. 39-2, ¶ 11; 50, ¶ 11; 60-3, p. 8; 60-4, p. 6-7).

Meléndez complained orally to Wyeth's HR department about López's conduct and comments on several occasions, including around the summer of 2007; HR took no action. However, Meléndez never placed any complaints in writing as allegedly required by Wyeth's "Fair Treatment" policy. Meléndez stated in his deposition that he was not aware of the "in writing" requirement. (Docket Nos. 24, ¶ 27; 31-2, p. 40, 48-50). He testified that the only person who allegedly discriminated and retaliated against him was his supervisor, López. (Docket Nos. 24, ¶ 31; 31-2, p. 35, 51).

In anticipation of eliminating its oral contraceptive and hormone replacement medication product lines, Wyeth merged its OC and Hormone Replacement units into the "Women's Health Care" business unit in 2007. Late that year, Wyeth began planning a plant-wide reorganization, scheduled to commence in 2008 and run through 2010. (Docket Nos. 24, ¶¶ 19-20; 24-3, ¶¶ 5-6).

As part of this process, Wyeth implemented the first of a series of reductions-in-force ("RIFs") in early January 2008.  Subsequent RIFs occurred twice more in 2008 and twice in 2009.[4]  Wyeth's HR department and the heads of the business units identified which employees were to be terminated in the first RIF; López was not involved in the decision.  The RIF impacted Meléndez, who was 50 at the time, and eighteen other employees both older and younger than him.  Other employees older than Meléndez, including another Manufacturing Material Handler, did not lose their jobs in the RIF.  The affected employees generally were notified of their termination on January 14, 2008.  López first learned of the decision to terminate Meléndez on that same date.  (Docket Nos. 24, ¶¶ 21, 23, 26, 29, 30; 24-3, ¶¶ 7, 10, 11; 50-4, ¶ 4; 50, ¶ 23; 50-6, ¶¶ 5, 7, 8).

Wyeth employed six Material Handlers total prior to the RIF.  All except Meléndez received a 2007 overall performance rating of 3 or higher.  Of the five others, all but one were younger than plaintiff; two were not yet 40 at the time of the RIF.  These others were not eliminated in the RIF. (Docket Nos. 24, ¶¶ 24-25; 24-3, ¶ 12, p. 9).  The Material Handler position in the Women's Health Care unit was eliminated as a result of the RIF, which affected employees who had received an overall performance rating of 2 or lower for 2007 and whose positions were "indirect," meaning they lacked direct contact with the product being manufactured.  Plaintiff's termination letter gave the elimination of his position as the reason without mentioning that his performance was considered.  (Docket Nos. 24, ¶¶ 21, 22; 24-3, ¶¶ 8, 9; 39-2, ¶ 21; 39-7; 60-5).

After the RIF, Wyeth did not hire any new employees as Material Handlers in the Women's Health Care business unit.  Rather, Wyeth retasked two Manufacturing Operators to do Meléndez's job functions on the first shift.  Likewise, on the second shift, a Manufacturing Operator and a Manufacturing Technician were assigned Material Handler work since there had been no permanent Material Handler in that shift since plaintiff's transfer to the first shift.  Because these positions were

---

[4] As the later RIFs are not pertinent to the instant narrative other than for the fact that they occurred as part of Wyeth's reorganization, the January 2008 RIF will be referred to simply as "the RIF."

"direct," they were not affected by the RIF, which targeted "indirect" positions. (Docket Nos. 24, ¶ 28; 31-2, p. 14-15, 53; 50, ¶ 24; 50-4, ¶¶ 5, 7; 60-2, p. 12-15; 60-3, p. 12-14). González testified that he and other temporary workers were relocated to other business units during the January 2008 reorganization. (Docket Nos. 39-2, ¶ 15; 60-4, p. 10-11). According to Seguí, in his experience, Wyeth would relocate affected employees to other areas and let temporary employees go first before eliminating permanent employees during a reorganization, but the reverse happened in Meléndez's case during the reorganization: Meléndez, a permanent employee, was let go while temporary employees were relocated. (Docket Nos. 39-2, ¶¶ 16, 19; 60-3, p. 11-12).

Meléndez filed the instant complaint on June 20, 2008, alleging the following causes of action: age discrimination and retaliation pursuant to the ADEA; age discrimination in violation of Law 100 of June 30, 1959, 29 L.P.R.A. § 146 *et seq.* ("Law 100"); unjustified dismissal in violation of Law 80 of May 30, 1976, 29 L.P.R.A. § 185a *et seq.* ("Law 80"); violation of Puerto Rico's general tort statute, Article 1802 of the Civil Code, 31 L.P.R.A. § 5141 ("Article 1802"); and violations of plaintiffs' civil rights under the Puerto Rico and federal constitutions. (Docket No. 1). The court subsequently dismissed plaintiffs' constitutional and Article 1802 claims. (Docket No. 10).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material only if it "might affect the outcome of the suit under the governing law." "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986)).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [evidence] . . . which

it believes demonstrate the absence of a genuine issue of material fact." <u>Crawford-El v. Britton</u>, 523 U.S. 574, 600 n.22 (1998) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).  Once this threshold is met, the burden shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Instead, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial" and support such facts with "affidavits . . . made on personal knowledge . . . set[ting] forth such facts as would be admissible in evidence." Fed. R. Civ. P. 56(e).  While the court draws inferences and evaluates facts "in the light most favorable to the nonmoving party," <u>Leary</u>, 58 F.3d at 751, summary judgment is still appropriate where the nonmoving party rests entirely on conclusory allegations, improbable inferences, unsupported speculation, or wholesale denials with regard to any essential element of the claim.  Fed. R. Civ. P. 56(e); <u>Libertad v. Welch</u>, 53 F.3d 428, 435 (1st Cir. 1995); <u>Carroll v. Xerox Corp.</u>, 294 F.3d 231, 236-37 (1st Cir. 2002); <u>Medina-Muñoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990).

## III. ANALYSIS

**A.      Sham Affidavit Challenge**

In support of their opposition to defendant's motion for summary judgment, plaintiffs submitted a sworn statement by Meléndez.  (Docket No. 39-3).  In its reply to plaintiff's opposition motion, defendant urges the court to disregard certain portions of the statement as a "sham affidavit." (Docket No. 50, p. 2-20).  In opposing a summary judgment motion, a party cannot attempt to create an issue of fact by filing a sham affidavit that contradicts prior deposition testimony.  <u>Rivera-Rocca v. RG Mortg. Corp.</u>, 535 F. Supp. 2d 276, 285 n.5 (D.P.R. 2008).  When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory without providing a satisfactory explanation of why he has changed his testimony.  <u>Colburn v. Parker</u>, 429 F.3d 325, 332 n.3 (1st Cir. 2005); <u>Colantuoni v. Alfred Calcagni & Sons, Inc.</u>, 44 F.3d 1, 4-5 (1st Cir. 1994).

Whether there is a contradiction and whether the explanation for it is satisfactory are often

highly fact-dependent.  Hernandez-Loring v. Univ. Metropolitana, 233 F.3d 49, 54 (1st Cir. 2000).

The timing of the change in testimony, *i.e.*, in response to a summary judgment request, is probative

of an attempt to manufacture an issue of fact.  See Colantuoni, 44 F.3d at 5; see also Orta-Castro v.

Merck, Sharp & Dohme Química P.R., Inc., 447 F.3d 105, 110 n.2 (1st Cir. 2006).  The court may

disregard portions of the affidavit containing unexplained inconsistencies, Colburn, 429 F.3d at 332

n.3, but need not specifically enumerate the contradictions that lead it to do so.  Orta-Castro, 447 F.3d

at 110.  However, the court may not disregard an affidavit pertaining to previously identified incidents

that the affidavit merely describes with more specificity.  Hernandez-Loring, 233 F.3d at 55.

Defendant points to multiple specific portions of Meléndez's affidavit as inconsistent with

plaintiff's deposition testimony.  Upon comparison of the affidavit with Meléndez's deposition

testimony in evidence, the court agrees with defendant that in many places the affidavit either

contradicts itself or plaintiff's deposition testimony or describes new incidents not described in the

deposition.  The court also notes that as defendant observes, the affidavit is internally inconsistent at

some points.  Although plaintiffs bear the burden of explaining these inconsistencies, the affidavit

does not acknowledge or explain them.  Plaintiff was deposed on June 12, 2009, with his counsel

present (Docket No. 31-2, p. 1, 2), so his counsel had the opportunity to correct or clarify any errors

in the deposition testimony.  See Colburn, 429 F.3d at 332 n.3.  Moreover, in response to defendant's

detailed recitation of the contradictions and new incidents described as against the deposition

testimony and even other portions of the same affidavit, plaintiffs' sur-reply attempts to reconcile the

inconsistencies.  (Docket No. 66).  However, upon examining the deposition testimony in light of

plaintiffs' claims, the court is not persuaded.

Importantly, the affidavit was not executed until October 7, 2009, after defendant had already

moved for summary judgment and only six days before the affidavit was filed with plaintiffs' motion

in opposition.  (Docket Nos. 25, 39, 39-3).  Given these circumstances, the court has disregarded the

portions of the affidavit which defendant identifies as inconsistent or contradictory for the reasons

defendant describes, which are too numerous to list here.  (See Docket No. 50).  In addition, the court

disregards those portions of the affidavit concerning matters as to which Meléndez has not shown he

is competent to testify.[5]  See, e.g., Nieves-Luciano v. Hernández-Torres, 397 F.3d 1, 5 (1st Cir. 2005)

("For purposes of summary judgment, an allegation in an affidavit must be based on personal

knowledge and show affirmatively that the affiant is competent to testify to the matters stated

therein.").

**B.      Age Discrimination under the ADEA**

The ADEA makes it illegal for an employer "to discharge any individual or otherwise

discriminate against any individual with respect to his compensation, terms, conditions, or privileges

of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  As the Supreme Court

recently clarified, a plaintiff must "establish that age was the 'but-for' cause of the employer's adverse

action."  Gross v. FBL Fin. Servs., Inc., — U.S. —, 129 S.Ct. 2343, 2351 (2009) (cited in Vélez v.

Thermo King de P.R., Inc., 585 F.3d 441, 446 (1st Cir. 2009)).  Where an employee lacks direct

evidence that the employer's actions were motivated by age animus, the First Circuit applies the

burden-shifting framework from McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).

Mesnick v. Gen. Elec. Co., 950 F.2d 816, 823 (1st Cir. 1991).[6]  Since plaintiff does not argue direct

evidence that Wyeth's actions were motivated by discriminatory animus, the McDonnell Douglas

framework applies to the instant case.

In this framework, the first step involves the employee's *prima facie* case, which consists of

four factors.  The employee must show: (1) that he or she is over forty years of age; (2) that his or her

job performance was satisfactory and met the employer's legitimate expectations; (3) that he or she

suffered an adverse employment action; and (4) that the defendant "sought a replacement with

---

[5] The court notes that in the affidavit, Meléndez nowhere states that the affidavit is based on his personal knowledge.  (Docket No. 39-3).

[6] The First Circuit continues to use the McDonnell Douglas framework even after the Supreme Court noted in Gross that it has not definitively decided whether McDonnell Douglas's evidentiary framework, utilized in Title VII cases, is appropriate in the ADEA context.  Vélez, 585 F.3d at 447 n.2 (quoting Gross, — U.S. at —, 129 S.Ct. at 2349 n.2).

roughly equivalent job qualifications, thus revealing a continued need for the same services and skills." See Gonzalez v. El Dia, Inc., 304 F.3d 63, 68 (1st Cir. 2002); Serrano-Cruz v. DFI P.R., Inc., 109 F.3d 23, 25 (1st Cir. 1997); Mesnick v. Gen. Elec. Co., 950 F.2d 816, 823 (1st Cir. 1991). Where, as here, the employee is discharged in the context of a reduction in force, the fourth McDonell Douglas prong is modified to require a showing that "younger persons were retained in the same position or that the employer otherwise did not treat age neutrally." Currier v. United Techs. Corp., 393 F.3d 246, 254 (1st Cir. 2004) (citing Cruz-Ramos v. P.R. Sun Oil Co., 202 F.3d 381, 384 (1st Cir. 2000); Brennan v. GTE Gov't Sys. Corp., 150 F.3d 21, 26 (1st Cir. 1998)).

Defendant concedes that plaintiff was in the protected age group and that his termination was an adverse employment action,[7] but argues that plaintiff cannot show the remaining elements of the *prima facie* case. (Docket No. 25, p. 5-14). Wyeth contends that Meléndez cannot meet the fourth element of the modified McDonnell Douglas framework. (Docket No. 25, p. 10-14). Under that prong, plaintiff must show that Wyeth retained younger persons in the same position or that Wyeth otherwise did not treat age neutrally. Currier, 393 F.3d at 254 (1st Cir. 2004). The required *prima facie* showing is not onerous, id., and indeed plaintiff has met his burden here through the undisputed fact that other Manufacturing Material Handlers junior to him in age were not terminated during the RIF. (Docket No. 24, ¶ 24; 24-3, p. 9; 39, p. 11-12).

Defendant also argues that Meléndez did not meet Wyeth's legitimate job expectations. To establish this McDonnell Douglas factor, the plaintiff must address two considerations: "whether the employer's expectations were legitimate and if so, whether the employee was meeting those expectations." Meléndez v. Autogermana, Inc., 606 F. Supp. 2d 189, 196 (D.P.R. 2009) (citation and quotation omitted). The court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the *prima facie* case. Thermo King, 585 F.3d

---

[7] Plaintiff argues that López's harassing remarks and conduct also constitute adverse employment actions. (Docket No. 39, p. 7-10). Because defendant has admitted this prong of the framework, I need not analyze this additional allegation by plaintiff.

at 448-49 (citations and quotation omitted).  Therefore, at this point, the court disregards Wyeth's

given reason for terminating plaintiff – his position was eliminated in the RIF – and instead considers

other evidence of plaintiff's performance, much of which is summarized in his performance review.

Meléndez first challenges the legitimacy of Wyeth's expectations with regard to the written

warnings.  Plaintiff alleges that the tasks for which he received the warnings were not part of his job

description, but rather, those of an Operator.  (Docket No. 39, p. 3-4).  However, as defendant points

out, Wyeth's Material Handler job description, which defendant submitted and authenticated,

specifically states that the job's responsibilities include "when necessary, record data on Production

documents."  (Docket Nos. 24-3, p. 3, 21; 49, p. 4; 50, ¶ 6).  The court finds unavailing plaintiff's

response that the official job description is irrelevant because in practice Operators, not Material

Handlers, did those duties.  (Docket No. 66, p. 5-6).  It cannot be seriously contended that an

employer cannot legitimately expect an employee to perform tasks listed in the employee's official

job description.  Next, plaintiff also relies on Seguí's testimony that Meléndez was overloaded with

work, including an Operator's duties as well as a Material Handler's.  (Docket No. 39, p. 4).

However, Wyeth has never argued that plaintiff's performance was sub-par due to failure to manage

and complete his workload; rather, Wyeth has consistently cited plaintiff's absenteeism and errors

he made in carrying out duties that, as said, are part of his job description.  (Docket No. 25, p. 8-9).

Whether Wyeth had legitimate expectations regarding plaintiff's workload is therefore irrelevant.

Plaintiff does not make any other argument as to the legitimacy of what was expected of him.

In arguing that he met Wyeth's expectations, plaintiff claims that his performance was

excellent and cites his coworker Seguí's testimony that Meléndez was good at his job.  (Docket Nos.

1, ¶¶ 2, 6, 13 ; 39, p. 5).  However, "an employee's perception of himself is not relevant.  Rather, it

is the perception of the decision maker which is relevant." Torrech-Hernandez v. Gen. Elec. Co., 519

F.3d 41, 49 (1st Cir. 2008) (quoting Karazanos v. Navistar Int'l Transp. Corp., 948 F.2d 332, 338 (7th

Cir. 1991)) (internal quotation and alteration omitted).  Seguí was not in a decision-making position;

his and Meléndez's own opinions of the latter's performance are thus irrelevant.  As noted in his

performance review, Meléndez had at least 21 unplanned absences in 2007 and made several errors on the job; he was evaluated as needing to improve his documentation practices.  Two MIRs were issued in connection with Meléndez's performance in 2007, though Meléndez apparently received a warning in connection with only one of them.  (Docket No. 31-5).  That warning, from April 2007, explicitly stated that Meléndez risked termination if his work did not improve.[8]  (Docket No. 31-4, p. 2).  This evidence demonstrates that Wyeth did not consider plaintiff's performance to be excellent, or even satisfactory, in 2007, as further shown by the "below expectations" rating of 2 that plaintiff received in his end-of-year performance evaluation.[9]

In arguing that he met Wyeth's expectations, plaintiff also points to the undisputed fact that his overall job performance had been rated a 3 for the year 2006.  (Docket No. 39, p. 5).  Additionally, plaintiff characterizes his series of jobs within Wyeth as "promotions" whereas Wyeth characterizes them as transfers.  (Docket Nos. 1, ¶ 2; 25, p. 7).  Both of these considerations are immaterial, however, because "the question is not whether at any time in [plaintiff's] employment he was meeting his employer's expectations; the question is whether he was meeting his employer's expectations at the time he was terminated."  Karazanos, 948 F.2d at 336; Autogermana, 606 F. Supp. 2d at 196.  Thus, Meléndez's 2006 performance review (and, for that matter, the June 2006 warning) cannot serve as evidence of Meléndez's continuing satisfaction (or failure) of Wyeth's expectations.[10]

---

[8] Plaintiff states that the warning was discriminatory because it was issued by López, whom plaintiff accuses of age-discriminatory comments and conduct.  (Docket No. 39, p. 4-5).  However, the MIR corresponding to the warning, which defendant submitted and authenticated, shows that several other Wyeth personnel were involved in the incident leading to the warning.  One Operator notified Meléndez to do the task he overlooked; another Operator observed the problem and notified Morales and two other Wyeth employees, who documented the incident and, along with López, discussed it with Meléndez on two separate occasions.  (Docket No. 50-3, p. 7-12).  The highly detailed MIR refutes Meléndez's suggestion that López fabricated a baseless warning in order to discriminate against him.

[9] Plaintiff claims that López's rating of 2 must itself have been motivated by age discrimination because the April 2007 warning is insufficient to justify such a rating.  (Docket No. 39, p. 4-5).  As noted, the April 2007 warning was not the only problem recounted in plaintiff's evaluation, so there is no indication that the 2 rating rested solely on that warning.  (See Docket Nos. 24-6; 31-5).

[10] The same rationale applies to plaintiff's argument that plaintiff must have been an excellent employee because he was assigned to train González when González began working at Wyeth in 2006,

Plaintiff has put forth no evidence, other than his own and Seguí's irrelevant personal opinions, that he was performing adequately as the first-shift Material Handler when he was terminated. On the other hand, the record shows that in 2007, Meléndez caused two MIRs, had at least 21 unplanned absences, and received a warning that threatened termination absent improvement. These problems were covered in the performance review with López less than one month before plaintiff's termination.

In light of the above, the court finds that plaintiff has failed to establish the second element of the *prima facie* case under the McDonnell Douglas framework. Furthermore, contrary to his argument (Docket No. 39, p. 6), plaintiff has not shown that a triable fact issue exists regarding whether his performance was deficient, given the absence of any relevant evidence of satisfactory job performance at the time of his termination. Defendant is therefore entitled to summary judgment on Meléndez's age discrimination claim.

Even assuming *arguendo* that plaintiff has made a *prima facie* showing, his age discrimination claim still fails. At the next stage of the McDonnell Douglas framework, the burden of production – not the burden of proof – shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the dismissal. Bennett v. Saint-Gobain Corp., 507 F.3d 23, 30-31 (1st Cir. 2007); Mesnick, 950 F.2d at 823. An employer is free to terminate an employee for any nondiscriminatory reason, whatever the merits of its business decisions. Webber v. Int'l Paper Co., 417 F.3d 229, 238 (1st Cir. 2005). Here, defendant has articulated a legitimate, nondiscriminatory reason for plaintiff's termination: Meléndez's position was eliminated in the January 2008 RIF because he, along with at least eighteen other employees, met the two eligibility criteria of poor performance and holding an "indirect" position. (Docket No. 25, p. 14-16).

Defendant having satisfied its burden of production, the burden shifts back to plaintiff, who can no longer rest on the initial inference of discrimination, but must show that defendant's

---

*i.e.*, over a year before plaintiff's termination. (Docket No. 39, p. 5).

articulated reason was pretextual.  Bennett, 507 F.3d at 31; Mesnick, 950 F.2d at 823.  At this point,

the McDonnell Douglas framework becomes less relevant; "[a]t the summary judgment phase, 'courts

should not unduly complicate matters . . . by applying legal rules which were devised to govern the

basic allocation of burdens and order of proof.'"  Domínguez-Cruz v. Suttle Caribe, Inc., 202 F.3d

424, 430 (1st Cir. 2000), *quoting* Mesnick, 950 F.2d at 825.  Instead, the focus should be on the

ultimate issue: "whether, viewing the aggregate package of proof offered by the plaintiff and taking

all inferences in the plaintiff's favor, the plaintiff has raised a genuine issue of fact as to whether the

termination of the plaintiff's employment was motivated by age discrimination." Domínguez-Cruz,

202 F.3d at 431 (citations and quotations omitted); see also Dávila v. Corporación de P.R. de la

Difusión Pública, 498 F.3d 9, 16 (1st Cir. 2007) ("At summary judgment, this question reduces to

whether or not the plaintiff has adduced minimally sufficient evidence to permit a reasonable

factfinder to conclude that he was fired because of his age.").  The plaintiff retains the burden of

persuasion to establish by a preponderance of the evidence that age was the "but-for" cause of the

adverse action.  Gross, — U.S. at —, 129 S.Ct. at 2351; Thermo King, 585 F.3d at 447-48.

 A plaintiff may show pretext by demonstrating, *inter alia*, that the employer articulated

different and arguably inconsistent explanations at different times for dismissing an employee.

Domínguez-Cruz, 202 F.3d at 432; Webber, 417 F.3d at 237.  Meléndez argues that such is the case

here, contending that defendant did not invoke his performance as a reason for his termination before

moving for summary judgment.[11]  (Docket No. 39, p. 22-23, 24-25).  Defendant responds (Docket No.

49, p. 12-13) that it has consistently stated that plaintiff's position was eliminated because of the

reorganization; indeed, its answers to plaintiff's interrogatories state as much.  (Docket No. 50-5, p.

7, 12-13).  The answers also detail plaintiff's performance problems, state that the "re-organization

---

[11] Plaintiff points to the following evidence: his termination letter states simply that his position
was eliminated (Docket No. 39-7); the answer to the complaint alleges that his position, along with
others, was eliminated due to Wyeth's reorganization (Docket No. 6, p. 7); the Joint Case Management
Memorandum states that the focus of the reorganization was to reduce the number of indirect
manufacturing positions.  (Docket No. 18, p. 6).

[was] based on seniority and/or performance," and state that plaintiff was ineligible for transfer to another position due to his poor performance. (Id., p. 10-11, 12, 13). The Joint Case Management Memorandum, too, discusses Meléndez's performance problems. (Docket No. 18, p. 6-7). The court thus agrees with defendant that its asserted rationale for terminating plaintiff, while not always stated in detail, has not been inconsistent. Plaintiff has not succeeded in showing pretext on this ground.

Plaintiff also argues that defendant did not follow its own criteria for the RIF because Seguí, who at age 40 was younger than plaintiff in January 2008, was not terminated despite having received a rating of 2 on his 2007 evaluation. (Docket No. 39, p. 25). While such an inconsistency can suggest pretext, see Thermo King, 585 F.3d at 450, the Operator position held by Seguí (and the younger employees who took over plaintiff's duties) was "direct" and thus was ineligible for the RIF regardless of performance rating. (Docket No. 50, ¶ 17). Plaintiff's argument that while he was a Material Handler, he performed Operator functions as well (Docket No. 39, p. 25) is unavailing since, as defendant has shown, the "Operator" tasks Meléndez argues he performed are also those of a Material Handler. (Docket No. 49, p. 4). Moreover, the other Manufacturing Material Handlers (one of whom was older than plaintiff), while their positions were "indirect" and hence susceptible to elimination, all received performance ratings of 3 or above for the year 2007 and were not terminated. (See Docket No. 24, ¶¶ 24-25). Such an outcome is consistent with the RIF criteria. There is no evidence that Wyeth applied its RIF criteria differently to plaintiff so as to be suggestive of pretext.

Next, plaintiff argues that Wyeth's assigning his duties to younger employees after his departure demonstrates that his termination as part of the RIF was pretextual.[12] (Docket No. 39, p. 10-11, 23-24). Plaintiff argues that at the least, a material fact question exists as to whether he was replaced by Material Handlers, as he argues his replacements were, or Operators, as defendant's evidence shows they were. (Docket Nos. 39, p. 11-12; 50, ¶ 24; 66, p. 15-17). The court is

---

[12] Plaintiff alleges that the reallocation demonstrates defendant's continuing need for Meléndez's services. (Id., p. 11). This argument is inapposite in the context of an RIF, which plaintiff does not deny occurred. See Currier, 393 F.3d at 254.

unpersuaded since, as defendant notes, plaintiff has not shown that he is competent to testify as to the other employees' positions. (Docket No. 50, ¶ 24). Moreover, the fact that his duties were reassigned to other Wyeth employees does not demonstrate that the RIF was a pretext for his termination. "[H]aving current employees fill the discharged employee's role is consistent with a reduction-in-force rationale while hiring outside replacements suggests that the reduction-in-force rationale was a sham because the position was not in fact eliminated." Rodriguez-Torres v. Caribbean Forms Mfr., Inc., 399 F.3d 52, 59 n.4 (1st Cir. 2005) (citing LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 846 (1st Cir. 1993)). "Thus, in a reduction-in-force case, an employee, trying to prove pretext on the ground that he was replaced, must prove that the replacement came from outside the company." Id. The undisputed facts show that Meléndez's duties were assumed by existing Wyeth employees, which does not indicate pretext.

Perhaps most damning to plaintiff's case is the disconnect between the discriminatory conduct and comments he allegedly suffered and Wyeth's decision to terminate him. In order to show that his dismissal was pretextual, "the plaintiff must ordinarily do more than impugn the legitimacy of the employer's asserted justification; he must also adduce evidence of the employer's discriminatory animus." Vega v. Kodak Caribbean, Ltd., 3 F.3d 476, 479 (1st Cir. 1993) (internal citation and quotation omitted). Plaintiff argues that the age-related comments by López, who he alleges was the only person who discriminated against him, show that his termination was motivated by age animus. (Docket Nos. 24, ¶ 31; 39, p. 4-5). While stray remarks may properly constitute evidence of discriminatory intent to be considered with other evidence by the jury, "their probativeness is circumscribed if they were made in a situation temporally remote from the date of the employment decision, . . . or if they were not related to the employment decision in question or were made by nondecisionmakers." McMillan v. Mass. Soc'y for the Prevention of Cruelty to Animals, 140 F.3d 288, 301 (1st Cir. 1998).

Wyeth has introduced evidence that López was completely uninvolved in the RIF process; he did not take part in the decision to terminate plaintiff and in fact only found out about the termination

the same day plaintiff did.  (Docket Nos. 24, ¶ 23; 49, p. 7; 50-6, ¶¶ 7, 8).  Plaintiff responds that

López *was* involved in plaintiff's termination because he gave plaintiff the 2 rating that Wyeth used

as a criterion to terminate him.  (Docket No. 66, p. 15).  As noted, however, there is evidence that the

rating was justified, and plaintiffs do not dispute that López was not part of the group that decided

whom to terminate.  Plaintiff's argument does nothing to cure the lack of any evidence connecting

the alleged age-related comments and actions to Meléndez's termination pursuant to the RIF, which

was unrelated to the comments.  Since the supervisor who allegedly made derogatory marks did not

make the termination decision, plaintiff cannot rebut defendant's asserted reason for his termination

on this ground.  Estevez v. Edwards Lifesciences Corp., 379 F. Supp. 2d 261, 265 (D.P.R. 2005).

Last, plaintiff claims that Wyeth had a policy of letting part-time or temporary employees go

before dismissing permanent or more senior employees, whom it would try to relocate rather than

terminate.  Plaintiff claims that Wyeth did not follow this policy during the RIF.  (Docket No. 39, p.

25).  However, as defendant notes, an employer does not have the duty to offer a transfer or relocation

to another position to a person affected by a layoff.  Estevez, 379 F. Supp. 2d at 265-66.  Wyeth's

failure to offer to relocate an underperforming older employee did not violate the ADEA.  Indeed, for

Wyeth to have done so for Meléndez would constitute an inconsistent application of its own RIF

criteria, just as Meléndez contends Wyeth may not do.

In short, plaintiff has failed to make out a *prima facie* case of age discrimination because he

has not shown that his performance was satisfactory at the time of the RIF that resulted in his

termination.  Even assuming that he has met his *prima facie* burden, plaintiff has not shown that age

discrimination was the but-for cause of plaintiff's termination.  Because plaintiff has failed to show

a genuine issue of material fact on this issue, I recommend that defendant's motion for summary

judgment on plaintiff's age discrimination claim be **granted**.

## C.      Retaliation under the ADEA

Defendant next challenges plaintiff's ADEA retaliation claim.  In addition to prohibiting age-

based discrimination, the ADEA provides that "[i]t shall be unlawful for an employer to discriminate

against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section, or . . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d). In order to make out a *prima facie* case of retaliation under the ADEA, a plaintiff must demonstrate that: "(i) he engaged in ADEA-protected conduct, (ii) he was thereafter subjected to an adverse employment action, and (iii) a causal connection existed between the protected conduct and the adverse action." Ramírez-Rodríguez v. Boehringer Ingelheim Pharm., Inc., 425 F.3d 67, 84 (1st Cir. 2005) (internal quotes omitted) (citing Mesnick, 950 F.2d at 827). It is not essential to the *prima facie* case that the underlying conduct be an ADEA violation. Rather, "[i]t is enough that the plaintiff had a reasonable, good-faith belief that a violation occurred; that he acted on it; that the employer knew of the plaintiff's conduct; and that the employer lashed out in consequence of it." Mesnick, 950 F.2d at 827.

Defendant accepts, for summary judgment purposes, that Meléndez suffered an adverse employment action – his dismissal. (Docket No. 25, p. 21). Defendant, however, argues that plaintiffs cannot establish that Meléndez engaged in protected activity because he did not put his complaints in writing per Wyeth policy and could not clearly state when in 2007 he made the complaints. (Docket No. 25, p. 21-22). However, plaintiff clearly testified in his deposition that he complained in the summer of 2007. (Docket No. 31-2, p. 49-50). Moreover, while the first element of the *prima facie* case requires a good-faith, reasonable belief that the employer's conduct violated the ADEA, Mesnick, 950 F.2d at 827, Wyeth has not suggested why it was unreasonable or in bad faith for plaintiff to believe that his supervisor's calling him an "old man" violated the ADEA or to complain orally to HR when, as he testified, he did not know that he had to file a complaint in writing. The court therefore finds that plaintiff has satisfied his burden of showing that Wyeth was on notice of Meléndez's complaints and that he held a reasonable, good-faith belief of an ADEA violation.

Next, Wyeth argues that plaintiffs cannot establish a causal connection between Meléndez's complaint to HR and his dismissal because López, the only one Meléndez testified discriminated against him, was uninvolved in the decision to terminate Meléndez. Yet Wyeth itself has alleged that

the RIF was planned by, among others, the HR department.  That is, the decision to terminate Meléndez was made in part by the very people to whom he had complained.  Moreover, plaintiff testified that López's harassing conduct and comments toward him increased after he complained.  (Docket Nos. 39, p. 14-17; 60-2, p. 8).  I therefore find that plaintiff has introduced sufficient evidence to meet the light requirement for the *prima facie* showing.

The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision.  Mesnick, 950 F.2d at 827.  Wyeth has done so by alleging that Meléndez was terminated as part of a reorganizational RIF.  (Docket No. 25, p. 23).  The burden thus shifts back to plaintiff to show that Wyeth's proffered reason is a pretext masking retaliation for Meléndez's opposition to a practice cast into doubt by the ADEA.  As in the discrimination context, the court at this point must "focus on the ultimate question, scrapping the burden-shifting framework in favor of considering the evidence as a whole.  Thus, the critical inquiry becomes whether the aggregate evidence of pretext and retaliatory animus suffices to make out a jury question."  Mesnick, 950 F.2d at 827 (citations omitted).

Here, plaintiff contends that he complained to HR "in the middle of the year 2007, between the months of September through November," but the only specific evidence in the record is plaintiff's testimony that he complained in summer 2007.  It is not clear from González's testimony when Meléndez went to see HR.  (Docket No. 39, p. 14).  The RIF plan was made around December 2007, about the same time as Meléndez's performance evaluation.  Plaintiff was terminated in January 2008.

Plaintiff alleges that López's conduct against him worsened after he complained to HR.  (Docket Nos. 39, p. 14-18).  Namely, plaintiff first contends that López retaliated against him by issuing his negative performance evaluation "immediately" after Meléndez complained.  The record disagrees.  First, an evaluation in December cannot be said to occur "immediately" after a complaint made in September or earlier.  Second, since "[t]hree and four month periods have been held insufficient to establish a causal connection based on temporal proximity," Calero-Cerezo, 355 F.3d

at 25, López's performance review took place too long after the HR complaint to be probative of retaliation.

Plaintiff also alleges that López increased his workload after he complained, specifically by adding a number of tasks, the assignment of an Operator's tasks, and the assignment of doing the Material Handler position in various shifts and production lines on top of his own first-shift job. (Docket No. 39, p. 16). However, plaintiff's only competent evidence in support of this contention is his deposition testimony that he complained to HR because he felt too much pressure to do his work since he could not do all his tasks.[13] After his HR complaint, Meléndez testified, the pressure continued and "got worse." (Docket No. 60-2, p. 8, 11). This testimony does not demonstrate that López increased Meléndez's workload in retaliation for complaining. Plaintiffs also cite their response qualifying defendant's statement of fact (Docket No. 39-2, ¶ 27) and page 193 of Meléndez's deposition. (Docket No. 39, p. 16). However, plaintiffs have not submitted a translation of page 193, and the court has disregarded their "qualification" of defendant's fact because it does not comply with Local Rule 56(c).

Meléndez also alleges that López told him Meléndez would be demoted and fired because he complained. (Docket No. 39, p. 16). However, the record citation for this allegation is the same disregarded portion of plaintiffs' response "qualifying" defendant's statement of fact. (Docket No. 39-2, ¶ 27). Furthermore, as defendant points out (Docket Nos. 49, p. 18-19; 50, ¶ 27), the portion of Meléndez's affidavit cited by plaintiffs in that response (Docket No. 39-3, ¶ 30) is inconsistent with plaintiff's deposition testimony. When questioned about the specific occasions when López

---

[13] Plaintiff gave the following testimony:
   Q. In other words, you complained because you had too much work?
   A. No, no, not to[o] much work, pressure.
   Q. Pressure. Pressure for you to complete your tasks?
   A. Pressure for me to do all the things I could not do.
   Q. Ok.
   A. Because there is a limit to the things I could do, but I could not do all of them.
 (Docket No. 60-2, p. 11).

threatened to fire him and why, Meléndez could not say that López threatened to fire him because he complained. Rather, Meléndez stated that the reasons why López threatened to fire him were that Meléndez had left tasks undone or that there was a deadline for getting product out and López wanted to look good for his higher-ups. (Docket No. 55-1, p. 9-16). Such testimony is not probative of retaliatory animus.

Plaintiff further alleges that he was fired for complaining to HR about López. (Docket No. 39, p. 17-18). Wyeth has established that López did not help decide whom to eliminate in the RIF; this lack of involvement does not support a finding of a causal connection. Furthermore, the termination took place too long after the complaint to be probative of retaliation. At a conservative estimate, around four months passed between plaintiff's complaint in summer 2007 and his termination in January 2008. The time elapsed is too great to establish a causal connection between the two incidents. Calero-Cerezo, 355 F.3d at 25. The court thus agrees with defendant that plaintiff cannot show a causal connection between his complaint and his termination in the RIF.

In light of the foregoing, there is insufficient evidence that plaintiff was retaliated against, either by López or HR, for complaining about López's comments and conduct. Therefore, defendant's motion for summary judgment on the retaliation claim should be **granted**.

**D.       Hostile Work Environment**

In their opposition to defendant's summary judgment motion, plaintiffs for the first time allege that defendant's actions created a hostile work environment due to plaintiff's age. (Docket No. 39, p. 18-21). Courts generally cannot entertain claims on summary judgment that never appeared in the complaint, as the defendant has an "inalienable right to know in advance the nature of the cause of action being asserted against him." Ruíz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 84 (1st Cir. 2008) (citation and quotation omitted). Litigants may constructively amend their pleadings by implied consent, but no grounds for such amendment exist here. See Fed. R. Civ. P. 15(b); Cruz-Acevedo v. Toledo-Dávila, 2009 WL 2151295, at *6 (D.P.R. July 15, 2009). Plaintiffs had ample opportunity to amend their complaint to add a hostile work environment claim against Wyeth, but

failed to do so. Moreover, plaintiffs do not discuss the topic of hostile work environment in the parties' Joint Case Management Memorandum. (Docket No. 18). Defendant's pleadings never treated plaintiff as having made a hostile work environment claim prior to plaintiffs' summary judgment opposition. (See Docket No. 25). Plaintiff has not introduced, and Wyeth has not acquiesced in the introduction of, any evidence relevant only to the hostile work environment issue. See Rodríguez v. Doral Mortg. Corp., 57 F.3d 1168, 1172 (1st Cir. 1995). I therefore recommend that summary judgment be granted as to the untimely claim.

Even if the court were to entertain plaintiffs' new legal theory at this late stage, plaintiffs have failed to produce evidence sufficient to establish a hostile work environment. Such claims are recognized under the ADEA. See Collazo v. Nicholson, 535 F.3d 41 (1st Cir. 2008); Rivera Rodríguez v. Frito Lay Snacks Caribbean, 265 F.3d 15, 24 (1st Cir. 2001), *abrogated in non-relevant part by* Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 118 (2002). In order to prevail, plaintiff must "provide sufficient evidence from which a reasonable jury could conclude that the offensive conduct is severe and pervasive enough to create an objectively hostile or abusive work environment and is subjectively perceived by the victim as abusive." Frito Lay, 265 F.3d at 24 (internal citation and quotation omitted). The plaintiff must establish (1) membership in a protected class; (2) that he was subjected to unwelcome harassment that (3) was based on age, (4) was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment, and (5) was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability exists. Reyes Vega v. Pepsi Cola P.R. Distrib. LLC, 371 F. Supp. 2d 21, 27 (1st Cir. 2005) (citing O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001)). In assessing whether a workplace is a hostile environment, the court examines the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is threatening or humiliating or merely an offensive utterance, and whether it unreasonably interferes with the employee's work performance. Frito Lay, 265 F.3d at 24 (internal citation omitted). A mere

offensive utterance does not create a hostile environment, and simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. Reyes Vega, 371 F. Supp. 2d at 27 (citation and quotation omitted).

Here, plaintiffs allege that López "on a daily basis" called plaintiff "old man" or "old fart" and spoke to him in a disrespectful tone, including yelling and swearing at him. Plaintiffs also allege that López assigned Meléndez Operator's duties in addition to his own, pressured him daily to finish his work, gave him too much work, blamed him in meetings for incomplete work, and would call him back after the end of his shift to finish undone tasks. Plaintiff's coworker González testified that other employees would make joking comments that Meléndez was an old man and that González would replace him, and Seguí testified to López's jokingly calling plaintiff an old man. The two witnesses testified that they found the comments to be inappropriate.[14]  (Docket No. 39, p. 7-10).

Much of this behavior does not qualify under the third prong of a hostile work environment claim: that the harassment be age-related. However rude López's yelling, swearing, and chastisement for unfinished work, "rudeness or ostracism, standing alone, usually is not enough to support a hostile work environment claim." Noviello v. City of Boston, 398 F.3d 76, 92 (1st Cir. 2005). There is no indication that this conduct was due to Meléndez's age. The same is true of the additional work López allegedly gave Meléndez, particularly since, as noted, Wyeth has shown that the duties Meléndez alleges belong to the Operator role overlap with a Material Handler's. (Docket Nos. 49, p. 4; 50, ¶ 6). Furthermore, there is no evidence that López threatened plaintiff with termination or other consequences due to his age.

---

[14] Plaintiffs also allege that Meléndez received medical treatment, including hospitalization, relating to depression stemming from his job situation and subsequent termination. (Docket No. 39, p. 19-20). However, the court will disregard this allegation because the only evidence in support thereof, an alleged medical report, has not been authenticated and is inadmissible hearsay. (Docket No. 39-8, 64-2). Likewise, the court has disregarded allegations about plaintiff's work environment supported by portions of plaintiffs' responses to defendant's statement of facts that do not comply with Local Rule 56(c) or by portions of Meléndez's affidavit that are inconsistent with his deposition testimony.

The only age-based harassment in evidence is the teasing about Meléndez's being an old man and that a younger man would replace him.  These comments do not meet the fourth requisite element.  Even assuming to be true the alleged daily frequency of the remarks, "the alleged conduct is too mild to form the basis of a hostile work environment claim.  There is no indication the conduct was, either objectively or subjectively, physically threatening, humiliating, nor that it interfered with [plaintiff's] work performance."  Villegas-Reyes v. Universidad Interamericana de P.R., 476 F. Supp. 2d 84, 91 (D.P.R. 2007).  Seguí and González both testified that the remarks were made in jest.  Simply put, these comments are not severe or pervasive enough to support plaintiff's claim.  Therefore, I recommend that should the court choose to entertain plaintiffs' untimely hostile work environment claim, summary judgment for defendant should nevertheless be **granted**.

E.      **State Law Claims**

In addition to their ADEA claims, plaintiffs also bring causes of action for age discrimination under Law 100 and unjustified dismissal under Law 80, pursuant to this court's supplemental jurisdiction.  See 28 U.S.C. § 1367.  "As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims."  Doral, 57 F.3d at 1177.  In cases where the federal claims are dismissed, "the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims."  Id.  The use of supplemental jurisdiction in these circumstances is completely discretionary, and is determined on a case-by-case basis.  Id.; see also Rodríguez Cirilo v. García, 908 F. Supp. 85, 92 (D.P.R. 1995) ("The assertion of supplemental jurisdiction over state law claims is within a federal court's discretion.  If federal law claims are dismissed before trial, however, the state law claims should also be dismissed.") (citations omitted).  Because I recommend granting defendant's motion for summary judgment on all federal claims, I also recommend that this court decline to exercise supplemental jurisdiction over plaintiffs' remaining Puerto Rico law claims.

**Meléndez-Ortiz, *et al.* v. Wyeth Pharmaceutical Co.**                                   Page 25
Civil No. 08-1676 (JAG/BJM)
**REPORT AND RECOMMENDATION**

## IV. CONCLUSION

For the reasons stated above, I recommend that defendant's motion for summary judgment

be **GRANTED**.

The parties have fourteen days to file any objections to this report and recommendation.  <u>See</u>

Local Rule 72(d); 28 U.S.C. § 636(b)(1).  Failure to file same within the specified time waives the

right to appeal this order.  <u>Henley Drilling Co. v. McGee</u>, 36 F.3d 143, 150-151 (1st Cir. 1994);

<u>United States v. Valencia</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>see also Paterson-Leitch Co. v. Mass. Mun.

Wholesale Elec. Co.</u>, 840 F.2d 985, 991 (1st Cir. 1988).

**IT IS SO RECOMMENDED**.

In San Juan, Puerto Rico, this 22nd day of September, 2010.


*S/Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge