IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MELENDEZ-ORTIZ, <u>et al.</u>,<br><br>**Plaintiff(s)**<br><br>v.<br><br>WYETH PHARMACEUTICAL CO.,<br><br>**Defendant** | CIVIL NO. 08-1676 (JAG) |

**OPINION AND ORDER**

Pending before the Court are Wyeth Pharmaceutical Co.'s Motion for Summary Judgment (Docket No. 25) and a Magistrate Judge's Report and Recommendation (Docket No. 81) advising that the motion be granted. For the reasons set forth below, the Court hereby **ADOPTS** the Report and Recommendation in its entirety and accordingly **GRANTS** the summary judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Humberto Meléndez-Ortiz ("Meléndez" or "Plaintiff") was born on November 2, 1957. Starting in 1996, he worked at Wyeth Pharmaceutical Co.'s ("Wyeth" or "Defendant") manufacturing plant in Guayama, first as a temporary employee, then as a regular employee as of January 5, 1998, when he was 40. (Docket Nos. 24, ¶¶ 1-3, 5; 31-2, p. 4-5). He received a copy of the Wyeth Employee Manual when he started his job and

received an updated copy whenever Wyeth modified it. (Docket No. 24, ¶ 4). Meléndez was originally hired as a Packaging Operator in Wyeth's Oral Contraceptives ("OC") unit, one of several business units at the plant. He subsequently became the second-shift Manufacturing Material Handler in OC, then successfully applied to transfer to the first shift in 2002, when he was 45. (Id., ¶¶ 1, 3, 6, 7). Each Wyeth business unit has its own Material Handlers. From his transfer up until his termination, Plaintiff was the sole first-shift Material Handler in OC. (Docket No. 24, ¶ 8). His job responsibilities included loading pallets of products, transferring bins of materials, stocking and maintaining operators' supplies and equipment, and recording data on production documents. His position was "indirect," meaning he had no direct contact with the medication being manufactured. (Id., ¶¶ 9-10). From late 2006 onward, Meléndez's supervisor was Alex López, the Senior Manufacturing Team Leader for the OC first shift, who reported to manager Javier Morales. (Docket Nos. 24, ¶ 13; 24-3, ¶ 4; 39-2, ¶ 4; 50-6, ¶¶ 3, 4, 6).

On June 23, 2006, Meléndez received a warning in writing[1] from Morales for failing to correctly monitor and document the temperature of a batch of oral contraceptive tablets, which is

---

[1] Plaintiff's contention that it is unknown whether the warning was written or verbal (Docket No. 39, p. 4) is unavailing in light of the written warning's inclusion in the record. (Docket Nos. 24-4; 31-3).

one of his responsibilities under the 'recording data on production documents' heading of his job description. (Docket Nos. 24, ¶ 11; 24-4, 31-3). On April 20, 2007, he received a written warning from López and Morales for failing to document steps in the temperature monitoring process for another batch of oral contraceptive tablets. The second warning cautioned further disciplinary action, including termination, if Meléndez's performance did not improve. A manufacturing investigation report ("MIR") was generated for each incident.[2] (Docket Nos. 24, ¶¶ 11-12; 24-5; 31-4). Meléndez testified in his deposition that he signed the warning only after López threatened him with termination if he did not sign it. (Docket No. 31-2, pp. 22-23).

Wyeth rates employees' performance on a scale from 1 ("significantly below expectations") to 5 ("significantly above expectations"). Meléndez received an overall performance rating of 3 ("meets expectations") for the year 2006. (Docket Nos. 24, ¶ 14; 39-2, ¶ 2). On December 21, 2007, López and Meléndez discussed Meléndez's 2007 performance evaluation, which rated his performance a 2 ("below expectations") overall and a 1 in the areas of "First Time Quality" and "Attendance." López notes, in the "First Time Quality" field, documented several errors Meléndez had made and that two MIRs had resulted from Meléndez's

---

[2] The MIR documentation, which defendant has authenticated, shows that plaintiff admitted to having made the errors at issue. (Docket Nos. 49, pp. 3-4; 50-3, pp. 1-2, 5, 9, 11).

failure to follow proper procedures: one report corresponding to the April 2007 warning, and another for which there is no evidence that Plaintiff received a warning. Meléndez's "Attendance" rating reflected at least 21 unplanned absences. Meléndez, who testified that he got upset and left the room during the discussion with López, left the evaluation's employee comment box empty. (Docket Nos. 24, ¶¶ 14-18; 24-6; 31-2, pp. 25-31; 31-5).

Luis Seguí, a Wyeth employee from 2005 until February 2008, worked with Meléndez. (Docket No. 39-2, ¶ 5). During his deposition, Seguí testified that since mid-2007, López referred to Meléndez jokingly as an "old man" and "old fart," comments which Seguí found mocking and offensive. (Docket Nos. 39-2, ¶¶ 6, 7; 50, ¶ 6; 60-3, p. 6-7). Ismael González, a temporary employee who worked with Meléndez until December 2006, testified in his deposition that in the presence of supervisors, Wyeth employees would make jesting comments that Meléndez was an old man and an old lady, and that González, who was much younger than Meléndez, was going to replace him. According to González, the supervisors' only response was to laugh at the comments, which González felt were "out of place." (Docket Nos. 39-2, ¶¶ 10, 12; 60-4, pp. 3, 4, 10).

Seguí further testified that he thought Meléndez's workload was excessive. (Docket Nos. 39-2, ¶ 9; 60-3, p. 7). González

testified that the Material Handler work for the other shifts would fall to Meléndez since the tasks left for those shifts typically would not get done. (Docket Nos. 39-2, ¶ 10; 50, ¶ 10; 60-4, p. 5). According to Seguí and González, López would seek out Meléndez after the end of Plaintiff's shift, berate him for allegedly failing to perform all his tasks, and order him to go back and complete tasks Meléndez had left for the next shift to do. (Docket Nos. 39-2, ¶ 11; 50, ¶ 11; 60-3, p. 8; 60-4, pp. 6-7).

Meléndez complained orally to Wyeth's HR department about López's conduct and comments on several occasions, including around the summer of 2007; HR took no action. However, Meléndez never placed any complaints in writing as allegedly required by Wyeth's "Fair Treatment" policy. Meléndez stated in his deposition that he was not aware of the "in writing" requirement. (Docket Nos. 24, ¶ 27; 31-2, pp. 40, 48-50). He testified that the only person who allegedly discriminated and retaliated against him was his supervisor, López. (Docket Nos. 24, ¶ 31; 31-2, pp. 35, 51).

In anticipation of eliminating its oral contraceptive and hormone replacement medication product lines, Wyeth merged its OC and Hormone Replacement units into the "Women's Health Care" business unit in 2007. Later that year, Wyeth began planning a plant-wide reorganization, scheduled to commence in 2008 and run

through 2010. (Docket Nos. 24, ¶¶ 19-20; 24-3, ¶¶ 5-6). As part of this process, Wyeth implemented the first of a series of reductions-in-force ("RIFs") in early January 2008. Subsequent RIFs took place twice more in 2008 and twice in 2009.[3] Wyeth's HR department and the heads of the business units identified which employees were to be terminated in the first RIF; López was not involved in the decisions. The RIF impacted Meléndez, who was 50 at the time, and eighteen other employees both older and younger than him. Other employees older than Meléndez, including another Manufacturing Material Handler, did not lose their jobs in the RIF. The affected employees were notified of their termination on January 14, 2008. López first learned of the decision to terminate Meléndez on that same date. (Docket Nos. 24, ¶¶ 21, 23, 26, 29, 30; 24-3, ¶¶ 7, 10, 11; 50-4, ¶ 4; 50, ¶ 23; 50-6, ¶¶ 5, 7, 8).

Wyeth employed six Material Handlers prior to the RIF. All except Meléndez received a 2007 overall performance rating of 3 or higher. Of the five others, all but one were younger than plaintiff; two were not yet 40 at the time of the RIF. These others were not eliminated in the RIF. (Docket Nos. 24, ¶¶ 24-25; 24-3, ¶ 12). The Material Handler position in the Women's

---

[3] As the later RIFs are not pertinent to the instant narrative other than for the fact that they occurred as part of Wyeth's reorganization, the January 2008 RIF will be referred to simply as "the RIF."

Health Care unit was eliminated as a result of the RIF, which affected employees who had received an overall performance rating of 2 or lower for 2007 and whose positions were "indirect." Plaintiff's termination letter gave the elimination of his position as the reason, without mentioning that his performance was considered. (Docket Nos. 24, ¶¶ 21, 22; 24-3, ¶¶ 8, 9; 39-2, ¶ 21; 39-7; 60-5).

After the RIF, Wyeth did not hire any new employees as Material Handlers in the Women's Health Care business unit. Rather, Wyeth re-tasked two Manufacturing Operators to do Meléndez's job functions on the first shift. Likewise, on the second shift, a Manufacturing Operator and a Manufacturing Technician were assigned Material Handler work since there had been no permanent Material Handler in that shift since Plaintiff's transfer to the first shift. Because these positions were "direct," they were not affected by the RIF, which only targeted "indirect" positions. (Docket Nos. 24, ¶ 28; 31-2, pp. 14-15, 53; 50, ¶ 24; 50-4, ¶¶ 5, 7; 60-2, pp. 12-15; 60-3, pp. 12-14). González testified that he and other temporary workers were relocated to other business units during the January 2008 reorganization. (Docket Nos. 39-2, ¶ 15; 60-4, pp. 10-11).

Meléndez filed the instant complaint on June 20, 2008, alleging the following causes of action: age discrimination and retaliation pursuant to the Age Discrimination in Employment

Act, 29 U.S.C. §621 *et seq.*, ("ADEA"); age discrimination in violation of Law 100 of June 30, 1959, P.R. Law Ann. tit. 29, § 146 *et seq.* (2011) ("Law 100"); unjustified dismissal in violation of Law 80 of May 30, 1976, P.R. Law Ann. tit. 29, § 185a *et seq.* (2011) ("Law 80"); violation of Puerto Rico's general tort statute, Article 1802 of the Civil Code, P.R. Law Ann. tit. 31, § 5141 ("Article 1802"); and violations of Plaintiffs' civil rights under the Puerto Rico and federal constitutions. (Docket No. 1). The court subsequently dismissed Plaintiff's constitutional and Article 1802 claims. (Docket No. 10).

Following discovery, Wyeth filed a Motion for Summary Judgment ("MSJ"). (Docket No. 25). In the motion, it argues that Plaintiff has failed to establish a *prima facie* case of age discrimination because he could not show that he met job expectations and that Wyeth retained younger persons in the same position or that it did not treat age equally. Id. It further avers that it articulated a legitimate, nondiscriminatory reason for terminating plaintiff (the RIF) and that he has not been able to demonstrate that said reason is pretextual. Meléndez opposed the motion and argued that his performance was satisfactory and that the warning that affected his evaluation for the year he was terminated was due to his supervisor's

discriminatory animus. (Docket No. 39). He also argues that he was replaced by younger employees.

In its reply, Wyeth moves the Court to disregard the affidavit submitted by Plaintiff with his opposition to the MSJ under the "sham affidavit" doctrine. (Docket No. 49). Plaintiff filed a sur-reply. (Docket No. 66). Having the parties briefed extensively the issues the motion in question was referred to the Magistrate Judge for a Report and Recommendation. (Docket No. 69). On September 22, 2010, the Magistrate Judge issued his report recommending that the Court grant summary judgment in favor of Wyeth. (Docket No. 81).

Meléndez subsequently requested an extension of time to file his objections to the Report and Recommendation. (Docket No. 82). Said request was made on the last day of the prescribed period for the filing of objections, October 12, 2010. An extension of time was granted until October 23, 2010. However, Meléndez never filed the objections. On October 23, 2010, Wyeth requested that the Report and Recommendation be adopted as unopposed as allowed by Supreme Court precedent. (Docket No. 84).

**STANDARD OF REVIEW**

1. <u>Summary Judgment Standard</u>

"Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled

to judgment as a matter of law based on the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits." Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008) (*citing* Fed. R. Civ. P. 56(c)). The issue is "genuine" if it can be resolved in favor of either party. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). A fact is "material" if it has the potential to change the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "In prospecting for genuine issues of material fact, we resolve all conflicts and draw all reasonable inferences in the nonmovant's favor." Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008).

Although this perspective is favorable to the nonmovant, once a properly supported motion has been presented before a court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant this Court's denial of the motion for summary judgment. Anderson, 477 U.S. at 248. The opposing party must demonstrate "through submissions of evidentiary quality, that a trial worthy issue persists." Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (internal citations omitted). Moreover, on issues "where [the

opposing] party bears the burden of proof, it 'must present definite, competent evidence' from which a reasonable jury could find in its favor." United States v. Union Bank for Sav. & Inv.(Jordan), 487 F.3d 8, 17 (1st Cir. 2007) (*citing* United States v. One Parcel of Real Property, 960 F.2d 200, 204 (1st Cir. 1992)). Hence, summary judgment may be appropriate, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (*citing* Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)). It is important to note that throughout this process, this Court cannot make credibility determinations, weigh the evidence, and make legitimate inferences from the facts, as they are jury functions, not those of a judge. Anderson, 477 U.S. at 255.

2. Standard for Reviewing a Magistrate Judge's Report and Recommendation

Pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b) and Local Rule 503, a district court may refer dispositive motions to a United States Magistrate Judge for a report and recommendation. *See* Alamo Rodriguez v. Pfizer Pharmaceuticals, Inc., 286 F. Supp. 2d 144, 146 (D.P.R. 2003). The adversely affected party may "contest the [m]agistrate [j]udge's report and recommendation by filing objections 'within ten days of

being served' with a copy of the order." United States v. Mercado Pagan, 286 F. Supp. 2d 231, 233 (D.P.R. 2003) (*citing* 28 U.S.C. § 636(b)(1)). If objections are timely filed, the district judge shall "make a *de novo* determination of those portions of the report or specified findings or recommendation to which [an] objection is made." Rivera-De-Leon v. Maxon Eng'g Servs., 283 F. Supp. 2d 550, 555 (D.P.R. 2003). A district court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." Alamo Rodriguez, 286 F. Supp. 2d at 146 (*citing* Templeman v. Chris Craft Corp., 770 F.2d 245, 247 (1st Cir. 1985)).

However, if the affected party fails to timely file objections, the district court may assume that they have agreed to the magistrate judge's recommendation. Id. In Thomas v. Arn., 474 U.S. 140 (1985), the Supreme Court stated that "[w]hen a party failed to object timely to a magistrate's recommended decision, he waives any right to further judicial review of that decision." Id. at 149 (*citing* McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir. 1983). The Court expressed that this rule is "supported by sound considerations of judicial economy" because it "enables the district judge to focus attention of those issues -factual and legal- that are at the heart of the parities' dispute." Id. at 147.

**ANALYSIS**

In the case at bar, the Court may proceed to adopt the Magistrate Judge's Report and Recommendation in its entirety without further review since no timely objections were filed. However, the Court will nonetheless briefly address the key aspects of the Report and Recommendation and conduct a *de novo* review of the Magistrate Judge's findings.

The Magistrate Judge concluded that the affidavit submitted by Meléndez in support of his opposition to the MSJ contains significant portions that should be disregarded under the "sham affidavit" doctrine. (Docket No. 81, pp. 7-9). This doctrine states that a party may not attempt to artificially create an issue of fact in order to prevent summary judgment by filing an affidavit that contradicts its prior testimony. <u>Rivera-Rocca v. RG Mort. Corp.</u>, 535 F.Supp. 2d, 285 n.5 (D.P.R. 2008). The Court has carefully reviewed the affidavit in question and finds, as did the Magistrate Judge, that it contains portions that clearly contradict his prior testimony and other parts of the affidavit itself. (Docket No. 81, pp. 7-9).

Regarding the merits of the ADEA claim, the Magistrate Judge found that Meléndez was not able to establish that he met Wyeth's legitimate job expectations. Nonetheless, the Magistrate Judge proceeded to assume *arguendo* that he had established a *prima facie* case order to examine Wyeth's proffered reason for

dismissal and determine if, as put forth by Meléndez, it was pretextual. This technique, which has been endorsed by the First Circuit, favors the claimant and promotes efficiency. *See* Hillstrom v. Best Western TLC Hotel, 354 F.3d 27, 31 (1st Cir. 2003).

It is well settled that, in the absence of a "smoking gun of evidence," a party may demonstrate pretext through several methods. He or she could show that he or she was treated differently than other similarly situated employees, Kosereis v. Rhode Island, 331 F.3d 207, 213 (1st Cir. 2003); that discriminatory comments were made by the decision maker or those in a position to influence the decision maker," Santiago-Ramos v. Centenial P.R. Wireless Corp., 217 F.3d 46, 55 (1st Cir. 2000); or, that there are "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's legitimate reasons." Id. Ultimately, however, a claimant has the burden of persuasion to establish that age was the "but-for" cause of the adverse employment action. Velez v. Thermo King de P.R., Inc., 585 F.3d 441, 446 (1st Cir. 2009) (citing Gross v. FBL Fin. Servs., 129 S. Ct. 2343, 2351 (2009).

In the case at bar, Wyeth argues that it terminated Meléndez because it was undergoing a RIF and his performance was inferior to that of those who were retained. Plaintiff rebuts that Wyeth has been inconsistent regarding its explanation for

terminating him and his performance and that others similarly situated to him were not terminated. In relation to the first argument, the Magistrate Judge found that, contrary to Plaintiff's assertion, Wyeth had not invoked for the first time during summary judgment his performance as a reason for termination, but that it had consistently stated it. (Docket No. 82, p. 15). It further found that Meléndez had not shown that others similarly situated to him had been treated differently. Id. In fact, the Magistrate Judge found that the other employees who, like Plaintiff, held the Manufacturing Material Handler position, which is an indirect position, had performance levels of 3, while Plaintiff's performance was 2.

Furthermore, the undersigned concurs with the Magistrate Judge in finding that Plaintiff has not been able to establish a causal connection between the comments proffered by López and the decision to terminate him. (Id. at 16). The only argument made by Plaintiff to establish the connection is that warnings issued by López are to blame for his performance rating. However, there is evidence that the warnings were justified because he failed to correctly perform duties contained in his job description, i.g. measure medicine batch's temperature in two occasions. It is also significant that one of the warnings was issued by López and Morales. Most importantly, the record

reflects that López was not involved in the final decision to terminate Plaintiff. (Docket No. 24, ¶ 23).

In relation to the retaliation claim under ADEA, the Magistrate Judge found that Meléndez was able to establish that he suffered an adverse employment action and that he had engaged in a protected activity by complaining to HR about López's comments at some point during 2007. (Docket No. 81, p. 19). However, Meléndez was not able to establish the causal connection between the complaint and either the negative 2007 evaluation or his termination. First, the Magistrate Judge found that too much time had elapsed between the suspected date of the complaint to HR and the 2007 evaluation, which was made in December of that year. (Id.) Second, Plaintiff was unable to establish that López increased his workload as a result of the complaints or that López threatened to fire him, as he alleged. (Id. at 21). Therefore, it is proper to find that Meléndez did not establish a *prima facie* case of retaliation under ADEA.

Furthermore, and contrary to the Magistrate Judge's liberal approach, the Court will not discuss Plaintiff's hostile work environment claim because it was raised for the first time in his opposition to the MSJ. Besides, it was found to be meritless by the Magistrate Judge. Finally, and since the federal claims are to be dismissed, the Court declines to

exercise supplemental jurisdiction over Plaintiff's state law claims.

## CONCLUSION

For the reasons stated above, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation in its entirety (Docket No. 81) and accordingly **GRANTS** Wyeth's Motion for Summary Judgment (Docket No. 25). The case shall be dismissed **with prejudice**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 1st day of February, 2011.

S/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge